**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **CARL KING AND** | § | |
| **LATANYA WALKER-KING** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.  5:18-cv-1113** |
| | § | |
| **TEXAS HEALTH AND HUMAN** | § | |
| **SERVICES COMMISSION;** | § | |
| **TEXAS MEDICAID & HEALTHCARE** | § | |
| **PARTNERSHIP, A STATE MEDICAID** | § | |
| **CONTRACTOR; SUPERIOR** | § | |
| **HEALTHPLAN, INC.; and THE** | § | |
| **RAWLINGS  COMPANY, LLC** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Come now **PLAINTIFFS CARL KING** and **LATANYA WALKER-KING and** hereby file their Original Complaint for Declaratory Judgment against **TEXAS HEALTH AND HUMAN SERVICES COMMISSION; TEXAS MEDICAID & HEALTHCARE PARTNERSHIP, A STATE MEDICAID CONTRACTOR; SUPERIOR HEALTHPLAN, INC.;** and **THE RAWLINGS COMPANY, LLC,** Defendants, and for cause of action would respectfully show the Court the following:

**PARTIES**

1.      Plaintiff Carl King (hereafter "King") is an individual who resides in San Antonio, Bexar County, Texas.

2.      Plaintiff Latanya Walker-King is an individual who resides in San Antonio, Bexar County, Texas and is the legal wife of Carl King.

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                                                    **Page 1**

3.     Defendant Texas Health and Human Services Commission (hereafter "HHSC") is a department of the Texas state government charged with the responsibility for administering the Medicaid program and may be served with process by serving Courtney Phillips in her official capacity, HHSC, Brown-Heatly Building, 4900 N. Lamar Blvd., Austin, Texas 78751.

4.     Defendant Texas Medicaid & Healthcare Partnership (hereafter "TMHP"), a State Medicaid Contractor, is an entity contracted by HHSC to handle its subrogation collection efforts and may be served with process by serving Courtney Phillips, in her official capacity, HHSC, Brown-Heatly Building, 4900 N. Lamar Blvd., Austin, Texas 78751.

5.     Defendant Superior HealthPlan, Inc. (hereafter "Superior"), a State Medicaid Contractor, is an entity contracted by HHSC to handle its subrogation collection efforts and may be served with process by serving its registered agent CT Corporation System, 1999 Bryan St., Ste. 900, Dallas Texas 75201-3136.

6.     Defendant The Rawlings Company, LLC (hereafter "Rawlings") is an entity holding itself out as handling Superior's subrogation collection efforts and may be served with process at One Eden Parkway, LaGrange, Kentucky 40031-8100.

## JURISDICTION

7.     Jurisdiction of Plaintiffs' claims herein is pursuant to 28 U.S.C. § 1331.  Plaintiffs' claims for injunctive and declaratory relief involve assertion of rights under the laws of the United States, specifically 41 U.S.C. § 1396p, 28 U.S.C. § 2201, and 42 U.S.C. § 1983. Plaintiffs' claims are pursuant to the Supremacy Clause of the U.S. Constitution.

## VENUE

8.     The events giving rise to King's injury and the Medicaid benefits he received for that injury occurred in San Antonio, Bexar County Texas.  The third-party recovery from which Defendants

seek subrogation was litigated pursuant to Civil Action No. 5:16-CV-1201-XR in the Honorable Judge Xavier Rodriguez's Court in the United States District Court for the Western District of Texas, San Antonio Division.  Hence, a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Texas, San Antonio Division.  As such, venue is proper in the Western District of Texas, San Antonio Division.  *See* 28 U.S.C. § 1391(b)(2).

## STATEMENT OF THE CLAIM

9.     On July 20, 2015, King sustained permanent cervical spinal cord injury causing quadriplegia while under the care of Vikram Durairaj, M.D. (Durairaj) at Mission Trail Baptist Hospital (MTBH) in San Antonio, Bexar County, Texas. Plaintiffs sought redress for King's injuries and damages in Civil Action No. 5:16-CV-1201-XR in the Honorable Judge Xavier Rodriguez's Court in the United States District Court for the Western District of Texas, San Antonio Division.  Confidential settlements were reached with Durairaj on November 14, 2017, and MTBH on July 19, 2018.  Plaintiffs dismissed Civil Action No. 5:16-CV-1201-XR on August 27, 2018.

10.     As a result of his cervical spinal cord injury causing quadriplegia, King required medical treatment and qualified for benefits under the Medicaid program administered by HHSC. From July 20, 2015 through July 19, 2018, when the sole remaining defendant in Civil Action No. 5:16-CV-1201-XR settled, HHSC provided Medicaid benefits to or on behalf of King.  TMHP and Superior handled HHSC's collection efforts for third-party recovery.  Superior apparently hired Rawlings to take over its collections recently.

11.     Pursuant to the November 14, 2017 and July 19, 2018 confidential settlements, TMHP, Superior and/or Rawlings asserted claims, some of which conflict and/or overlap.  The best way to appreciate this history is visually followed by further explanation:



The timeline above has five levels or rows reading from top to bottom.

12.    The first level/row is the relevant time period from July 20, 2015, when King's injury

occurred, to July 19, 2018, when the final confidential settlement was reached in Civil Action No.

5:16-CV-1201-XR, thereby ending HHSC's time for third-party recovery.

13.    The second level/row is the November 14, 2017 confidential settlement with Durairaj,

which, as will be seen below, culminated in King paying TMHP and Superior on February 26,

2018, which paid HHSC's subrogation interest in full through February 16, 2018.

14.    The third level/row reflects that, prior to paying TMHP and Superior, King had previously

written them (Rawlings was not yet in the picture) requesting their respective subrogation amounts

with an itemization of the relevant medical expenses claimed.  On December 27, 2017, TMHP

wrote its final subrogation interest (as of that date) was $18,210.47 reflecting relevant medical expenses paid through December 31, 2015.  On January 15, 2018, King wrote TMHP requesting a reduction in HHSC's subrogation interest.  TMHP did not respond.  On January 19, 2018, King wrote Superior asking for its subrogation interest.  On February 16, 2018, Superior wrote that its final subrogation interest (as of that date) was $72,531.84.  On February 26, 2018, King wrote TMHP enclosing a check for $18,210.47 and Superior enclosing a check for $72,531.84.  At all relevant times, in constructing their damage model for past medical expenses, making settlement demands based on that damage model, and negotiating settlements also based on that damage model, King necessarily relied on the dollar amounts for relevant paid past medical expenses; i.e., subrogation interests, provided by TMHP and Superior.  In other words, King's settlement demands, negotiations, and settlements were necessarily limited by the amounts for relevant paid past medical expenses/subrogation interests provided by TMHP and Superior.  To rely on any other numbers would not have been credible.

15.    The fourth level/row is the second and final confidential settlement on July 19, 2018, with MTBH, the sole remaining defendant. July 19, 2018 is the cutoff date for HHSC's third-party recovery because, as of this date, there were no longer any active parties. That same day, King wrote both TMHP and Superior requesting their respective subrogation interests incurred since the previous settlement and payment on February 26, 2018.  King wrote TMHP again on August 27, 2018, and Superior again on August 28, 2018, confirming the July 19, 2018 settlement and requesting their respective subrogation interests incurred since the February 26, 2018 payments.[1]

---

[1] On July 31, 2018, TMHP wrote stating HHSC's subrogation interest in favor of Medicaid was paid in full and no further payment was required.

16.    The fifth level/row reflects the responses of TMHP and Rawlings, now apparently standing in for Superior.[2]

17.    On September 18, 2018, TMHP, implicitly acknowledging payment in full through at least February 1, 2018, provided an updated itemization and final subrogation interest in the amount of $91,967.54, covering the interval February 1, 2018 through August 21, 2018.  Because the case settled on July 19, 2018, expenses incurred after this date should not have been included.  Using July 19, 2018 as the cutoff date, the amount is $78,031.29.

18.    Rawlings, apparently acting on behalf of Superior, provided an itemization of expenses totaling a sum never before seen in the amount of $362,612.57, or five times what King could have demanded or negotiated relying on the only amount previously provided by Superior; i.e., $72,531.84.  Further, in coming up with its number, Rawlings reached back as far as January 1, 2016, thereby completely ignoring King's $72,531.84 payment in full through February 16, 2018 to Superior.  Rawlings' $362,612.57 also captured medical expenses through July 20, 2018, thereby overlapping and duplicating TMHP's expenses for the interval February 1, 2018 through July 20, 2018.  Rawlings gets paid by taking a percentage of whatever it collects.

19.    Rawlings, ostensibly on behalf of Superior, and TMHP are duplicating collection efforts and one does not know what the other is doing.  On February 26, 2018, the subrogation interest of HHSC handled by Superior was paid in full for January 1, 2016 through February 16, 2018 (prior to January 1, 2016, TMHP handled HHSC's subrogation interest).  Rawlings' itemization completely ignores payment in full of HHSC's subrogation interest through February 16, 2018. For the interval January 1, 2016 through January 31, 2018, Rawlings counts medical expenses

---

[2] Despite requests, Rawlings has not provided Plaintiffs with any acceptable written authority to negotiate or compromise HHSC's subrogation interests providing Plaintiff with full and final closure.

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                              **Page 6**

deemed "unrelated" by Superior.  For the interval February 1, 2018 through July 19, 2018, Rawlings double counts medical expenses also counted by TMHP.

20.      Because TMHP, Superior and Rawlings and are not communicating with each other and duplicating efforts, any agreement reached with one still subjects Kings and their lawyers to collection efforts by the others.   Of further concern, because Rawlings has provided no written authority to act on behalf of HHSC, any agreement reached with Rawlings risks continued and duplicative collection efforts by Superior and/or HHSC.  Kings and their lawyers cannot get closure under this dysfunctional arrangement.

21.      Full compensation for King's cervical spinal cord injury causing quadriplegia would greatly exceed the amounts of the confidential compromise settlements in Civil Action No. 5:16-CV-1201-XR.[3]  Compromise was influenced by serious issues of liability and by the itemizations of paid past medical expenses provided to King by TMHP and Superior during the pendency of Civil Action No. 5:16-CV-1201-XR.  Kings relied upon these itemizations in constructing their damage model, making settlement demands and  negotiating both settlements.

22.      HHSC through TMHP has, pursuant to Title XIX of the Social Security Act and Texas Human Resources Code, Chapter 32, Section 32.033, asserted a claim in the amount of $91,967.54 against the funds the Kings received as a result of the second and final settlement Civil Action No. 5:16-CV-1201-XR. Kings' attorneys are holding in a trust account the sum of $91,967.54 pending resolution of the claims and request for relief asserted herein.

23.      Rawlings, ostensibly acting on behalf of Superior, but not explicitly acting on behalf of HHSC nor explicitly acting pursuant to any statute, has asserted a claim in the amount of $362,612.57 against the funds Kings received as a result of the second and final settlement in Civil

---

[3] The amounts of the settlements can be provided confidentially to the Court.

**PLAINTIFFS' ORIGINAL COMPLAINT**                                              **Page 7**

Action No. 5:16-CV-1201-XR. Kings' attorneys are holding in a trust account the sum of $362,612.57 pending resolution of the claims and request for relief asserted herein.

24.     The above-described funds, presently held by Kings' attorneys in trust for Kings' benefit, constitute Kings' property.

25.     The claims asserted by TMHP is completely duplicated by Superior through Rawlings. Claims asserted by TMHP go beyond the July 19, 2018 final settlement.  Any claims after July 19, 2018 should be precluded.  Most of the claims now asserted by Rawlings for Superior predate the February 26, 2018 payment in full to Superior of its subrogation interest through February 16, 2018.  Rawlings willfully ignores this payment.

26.     There exists a genuine controversy between Plaintiffs and Defendants as to the extent of Defendants' right of repayment from property owned by Plaintiffs and the extent to which any Texas Code as applied to Plaintiffs' property hereinabove described, is preempted by 42 U.S.C. § 1396p(a) and whether Defendants' assertion of a lien against Plaintiffs' property, under color of state law, deprives Plaintiffs of a right under 42 U.S.C. § 1396p(a) and therefor is in violation of U.S.C. § 1983. Plaintiffs therefore request declaratory relief, pursuant to 28 U.S.C. § 2201, declaring the respective rights of the parties as regards these funds and construing and determining the extent to which any Texas Code may be applied to these funds, under the Supremacy Clause, Article VI, United States Constitution.

27.     42 U.S.C. § 1396p(a)(1) provides: "No lien may be imposed against the property of any individual prior to his death on a count of medical assistance paid or to be paid on his behalf under the state plan, except…"  None of the exceptions to this provision are applicable here. The lien claimed by Defendants against Plaintiffs' property arises out of medical assistance paid under a state plan.

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                                      **Page 8**

28.      In Civil Action No. 5:16-CV-1201-XR, in addition to the past medical expenses giving rise to Defendants claims for payment, King also plead for: 1) past and future physical pain and mental anguish; 2) loss of earnings in the past future; 3) loss of earning capacity; 4) past and future disfigurement; 5) past and future physical impairment; and 6) future medical expenses.   In addition, King's wife plead for: 1) past and future loss of household services; and 2) past and future loss of consortium.  King was, at the time of his injury, 51 years of age with a future life expectancy of 66 years. Kings' damages exceed the total sum realized from all settling parties in Civil Action No. 5:16-CV-1201-XR.

29.      Kings' rights to compensation for each of these elements of damage recognized under Texas law, constitutes a separate property interest of the Kings.

30.      Chapter 32, § 32.033 of the Texas Human Resources Code provides for an assignment to HHSC of a Medicaid applicant's right of recovery but the "commissions right of recovery is limited to the amount of the cost of medical care services paid by the commission."  Hum. Res. Code § 32.033(e).   To the extent that such assignment extends to Plaintiffs' claims for elements of damage other than relevant paid past medical expenses, the assignment and lien created by Texas Human Resources Code § 32.033 is a direct violation of Plaintiffs' rights under 42 U.S.C. § 1396p(a)(1), as constituting a lien upon Plaintiffs' property, and is therefore, to that extent, invalid by reason of the Supremacy Clause.

31.      In *Arkansas Department of Health and Human Services, et. al, vs. Heidi Ahlborn,* 547 U.S. 268 (2006), under circumstances like these, the question presented to the Supreme Court of the United States was:  how much does Medicaid get?  100% of its $215,645.30 claim or just a pro-rata one-sixth share, based on the parties' agreement that the settlement amounted to one-sixth of the reasonable value of Ahlborn's claim.  The Supreme Court held that Medicaid was not to receive

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                      **Page 9**

an amount exceeding $35,581.47 or one-sixth of its claim. *Ahlborn,* 547 U.S. at 269.  "Here, because the tortfeasors accepted liability for only one-sixth of Ahlborn's overall damages, and ADHS has stipulated that only $35,581.47 of that sum represents compensation for medical expenses, the relevant "liability" extends no further than that amount." *Id*. at 269.  The Supreme Court held out that the client's duty to cooperate does not require that the client forgo his own recovery in favor of the state. The Supreme Court reconciled the state's right to reimbursement with the anti-lien statute by declaring that the state may only recover its fair share from the third-party claim. When there is not enough recovery to go around, the parties may either stipulate to an allocation of the recovery (as done in the *Ahlborn* case) or may obtain a court determination as to the total value of the claim and the pro-rata share to which the claimant and Medicaid are each entitled.

32.     The Supreme Court re-affirmed its *Ahlborn* decision in *Wos v. E.M.A. ex rel. Johnson*, 133 S.Ct. 1391, 1395, 1396-98 (2013).  In *Wos*, the Court considered whether North Carolina's presumption that one-third (1/3) of a Medicaid beneficiary's tort settlement should be allocated to past medical expenses when the Medicaid beneficiary's tort settlement did not allocate money to the Medicaid beneficiary's various medical and non-medical claims.  *Id*. at 1395-1396. The Supreme Court struck down North Carolina's presumption and reaffirmed *Ahlborn*, holding that Medicaid's anti-lien provision prohibits Medicaid from making a claim to any part of a Medicaid beneficiary's tort recovery not designated as payment for past medical care paid by Medicaid. *Id*. at 1396, 1402. Additionally, the Supreme Court again held that in the event that litigants do not allocate specific sums from a settlement to specific claims (i.e., past medical, mental anguish, pain and suffering, etc.), a party may submit the matter of determining how much of the settlement should be allocated to past medical to a court for decision. *Id*. at 1399. A New York post-*Ahlborn*

case applied the allocation principles: *Chambers v. Jain* 2007 WL 1118383 (N.Y.Sup.).  The

opinion in *Lugo v. Beth Israel Med. Center*, 819 N.Y.S.2d 892, 13 Misc.3d 681 (2006), applied

*Ahlborn* the same way. Another New York opinion allowed all of the settlement funds to be

allocated to the conscious pain and suffering of the 6-year-old decedent instead of allocating any

of the settlement to Medicaid's $485,429.00 subrogation claim; see *In Re Wright*, ____ N.Y.S. 2d

____, 2008 WL 2447373 (N.Y. Sur) 2008 N.Y. Slip Op. 28230. New York applied *Ahlborn* again

on August 27, 2009 in *Homan v. County of Cattaraugus Department of Social Services*, 2009 WL

2751070, 2009 N.Y. Slip Op. 51854(U). Another Missouri class action was certified in *Wilhoite*

*v. Missouri Dept. Soc. Serv.*, 2011 WL 529511, (D. Ct. W. D. Mo. Cent. Div. Feb. 7, 2011). In

*Branson v. Sharp Healthcare*, 2011 WL 1136233 (Cal. Ct. App. 4th Dist. March 30, 2011, the

court applied *Ahlborn* to reduce the Medi-Cal lien to 23.4% of its $1,125,113 expenditure, then

reduced again for attorney's fees and expenses incurred in obtaining the $6,804,269 recovery, for

total Medi-Cal recovery of $189,749. In *Bolanos v. Superior Court*, 169 Cal. App. 4th 744, 87 Cal.

Rpter.3d 174, Dec. 2008, review denied March 11, 2009, the California appeals court ordered the

trial court to conduct an allocation hearing and to apply *Ahlborn*. A similar result was ordered in

Oklahoma in *Moss v. Wittmer*, ___ P.3d ___, 2009 WL 5289413 (Okla.Civ.App.Div. 4), 2009 OK

Civ App 102, and in *Smalley v. Nebraska Dept. of HHS*, No. 2010 WL 5527370, D. Ct, Cass Co.

Nebraska, Dec. 30, 2010, awarding only 13.4% of the state's interest. See also *Southwest*

*Fiduciary, Inc., v. Arizona Health Cost Containment System Admin*, No. 1 CA-CV 10-0300 and 1

CA-CV 10-0301, March 10, 2011, reducing a $268,080 lien to 24% as the pro-rata share of the

recovery.  Class action status was granted in Missouri in *Doran v. Missouri Department of Social*

*Services*, 2008 WL 199079 (D. Ct. W. Dist. Mo. May 2, 2008), where the state is accused of

overreaching in its attempts to subrogate against plaintiffs' workers compensation recoveries. On

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                                      **Page 11**

September 2, 2008, the Missouri trial court denied most of the summary judgment relief requested by the state and chastised the state for continuing its post-*Ahlborn* lien collection efforts in the same way as its pre-*Ahlborn* collection efforts: "The parties in the instant case agree that *Ahlborn* applies to the Department. They agree that the Department may only recover funds from that portion of Missouri Medicaid recipients' settlement award which reimbursed medical costs. They agree that the Department violates federal law if it seeks to recover funds meant to reimburse for other types of injury such as disability, wages, or pain and suffering. However, the Department's lien notices have not changed since the February 2005 *Ahlborn* ruling.

32.     None of the Defendants herein has applied *Ahlborn* and its progeny to their claims, despite requests to do so.   But before applying *Ahlborn,* payment in full to HHSC through February 16, 2018 must be considered.  Plaintiffs requested the subrogation amounts, TMHP stated it was owed $18,210.47; Superior stated it was owed $72,531.84; and Plaintiffs paid these amounts on February 26, 2018.  *Ahlborn,* then, applies only to HHSC's subrogation interest incurred since February 16, 2018 and ending July 19, 2018.

33.     Plaintiffs request that the Court adjudicate and declare, by way of declaratory judgment, that the right of HHSC (through TMHP, Superior, Rawlings or any other entity) to reach Plaintiffs' settlements in Civil Action No. 5:16-CV-1201-XR is limited to relevant paid medical expenses furnished by HHSC.

34.     Plaintiffs further request that the Court adjudicate and declare, by way of declaratory judgment, that the right of HHSC (through TMHP, Superior, Rawlings or any other entity) to reach Plaintiffs' settlements in Civil Action No. 5:16-CV-1201-XR be limited to the final settlement with MTBH reached on July 19, 2018, as the previous settlement funds have been completely disbursed in reliance on TMHP and Superior's representations.

35.     Plaintiffs further request that the Court adjudicate and declare, by way of declaratory judgment, that the right of HHSC (through TMHP, Superior, Rawlings or any other entity) to reach Plaintiffs' settlements in Civil Action No. 5:16-CV-1201-XR shall not include any medical expenses incurred before February 16, 2018.

36.     Plaintiffs further request that the Court adjudicate and declare, by way of declaratory judgment, that the right of HHSC (through TMHP, Superior, Rawlings or any other entity) to reach Plaintiffs' settlements in Civil Action No. 5:16-CV-1201-XR shall not include any medical expenses incurred after July 19, 2018.

37.     Plaintiffs further request that the Court adjudicate and declare, by way of declaratory judgment, that the right of HHSC (through TMHP, Superior, Rawlings or any other entity) to reach Plaintiffs' settlements in Civil Action No. 5:16-CV-1201-XR shall not include any duplicate claims, and, in particular, shall not include any claims asserted by Rawlings as they duplicate Superior's claims paid in full for January 28, 2016 through February 16, 2018, and TMHP's claims for February 1, 2018 through July 20, 2018.

38.     Plaintiffs further request that the Court adjudicate and declare, by way of declaratory judgment, that the right of HHSC (through TMHP, Superior, Rawlings or any other entity) to reach Plaintiffs' settlements in Civil Action No. 5:16-CV-1201-XR is subject to the *Ahlborn* pro rata reduction of that portion of the July 19, 2018 final settlement with MTBH comprising paid past medical expenses from February 16, 2018 through July 19, 2018.

39.     Plaintiffs further request that the Court adjudicate and declare, by way of declaratory judgment, that $78,031.29 be used for the portion of the July 19, 2018 final settlement with MTBH comprising paid past medical expenses from February 16, 2018 through July 19, 2018, which is arrived at using TMHP's itemization for that time period.

**PLAINTIFFS' ORIGINAL COMPLAINT**                                              **Page 13**

40.     Plaintiffs further request that the Court adjudicate and declare, by way of declaratory judgment, that the right of HHSC (through TMHP, Superior, Rawlings or any other entity) to reach Plaintiffs' settlements in Civil Action No. 5:16-CV-1201-XR shall be limited to $37,454 as a result of *Ahlborn* pro rata reduction of that portion of the July 19, 2018 final settlement with MTBH comprising paid past medical expenses from February 16, 2018 through July 19, 2018.[4]

41.     Plaintiffs further request that HHSC, TMHP, Superior, and Rawlings be permanently enjoined from seeking to impose a subrogation interest or lien against any person or entity and be enjoined from instituting any action against any person or entity beyond seeking recovery of an *Ahlborn* pro rata share or fraction of $78,031,[5] adjudicated herein to be that attributable to Carl King's past medical expenses furnished by HHSC and owed to HHSC.

42.     Pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988(b), Plaintiffs further request that the Court adjudicate and declare, by way of declaratory judgment, that Plaintiffs' attorneys are entitled to reasonable attorneys' fees and costs, considering their time expended communicating with Defendants, preparing and prosecuting this complaint, their qualifications and experience, and opportunity costs.

### DEMAND FOR JUDGMENT

---

[4]  The basis for this result necessarily includes the confidential settlement amount which can be provided to the Court.

[5]  $78,031         paid past medical expenses per TMHP
$5,629,974      future medical expenses present value per report of Ken McCoin, Plaintiffs' retained economist
  $316,552      lost earning capacity present value per report of Ken McCoin
  $250,000      non-economic damages capped per Civil Practice & Remedies Code §§ 74.301, 74.302
$6,274,557      total value of the claim
$********       July 19, 2018 confidential settlement amount
$********/$6,274,557 = multiplier
$78,031 x multiplier = *Ahlborn* pro rata amount

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                    **Page 14**

**WHEREFORE, PREMISES CONSIDERED**, Carl King and Latanya Walker-King, Plaintiffs herein, demand declaratory and injunctive relief against Defendants and each of them, as hereinabove set forth and that Plaintiffs be granted all further relief which the Court deems just and proper, including recovery of costs and attorney fees.

Respectfully submitted,

By: _____

**RYAN KREBS, M.D., J.D.**
Texas State Bar No. 00792088

**LAW OFFICE OF RYAN KREBS, M.D., J.D.**
805 W. 10th Street, Suite 300
(512) 478-2072
(512) 494-0420 Facsimile
ryan@ryankrebsmdjd.com

AND

**MICHELLE MALONEY**
Texas State Bar No. 24069099
**MARYNELL MALONEY LAW FIRM, PLLC**
115 East Travis Street, Suite 1800
San Antonio, Texas 78205
(210) 212-8000
(210) 212-8385 Facsimile
michelle@marynellmaloneylawfirm.com

**CHRIS HERNANDEZ**
Texas State Bar No. 24069098
**MARYNELL MALONEY LAW FIRM, PLLC**
115 East Travis Street, Suite 1800
San Antonio, Texas 78205
(210) 212-8000
(210) 212-8385 Facsimile
chris@marynellmaloneylawfirm.com

**ATTORNEYS FOR PLAINTIFFS**